1

|   |   |   |
|---|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT | |
|   | NORTHERN DISTRICT OF ILLINOIS | |
| 2 | EASTERN DIVISION | |
| 3 | IN RE: NATIONAL COLLEGIATE ) | Docket No. 16 C 8727 |
|   | ATHLETIC ASSOCIATION STUDENT- ) | |
| 4 | ATHLETE CONCUSSION INJURY ) | Chicago, Illinois |
|   | LITIGATION - SINGLE SPORT/ ) | May 30, 2019 |
| 5 | SINGLE SCHOOL (FOOTBALL) ) | 10:00 o'clock a.m. |
| 6 | TRANSCRIPT OF PROCEEDINGS - MOTION | |
|   | BEFORE THE HONORABLE JOHN Z. LEE | |
| 7 | | |
|   | APPEARANCES: | |
| 8 | | |
|   | For the Plaintiffs: | EDELSON, PC |
| 9 | | BY: MR. BENJAMIN H. RICHMAN |
|   | | 350 N. LaSalle St., 14th Floor |
| 10 | | Chicago, Illinois 60654 |
| 11 | | ANAPOL WEISS |
|   | | BY: MR. SOL H. WEISS |
| 12 | | 130 North 18th Street, Suite 1600 |
|   | | Philadelphia, Pennsylvania 19103 |
| 13 | | |
|   | For a Plaintiff | HEALY LAW OFFICE |
| 14 | via teleconference: | BY: MR. MATTHEW J. HEALY |
|   | | 1515 Wynkoop Street, Suite 360 |
| 15 | | Denver, Colorado 80202 |
| 16 | For MIAA: | SEIGFREID BINGHAM, P.C. |
|   | | BY: MR. GREGORY B. WHISTON |
| 17 | | 2323 Grand Boulevard, Suite 1000 |
|   | | Kansas City, Missouri 64108 |
| 18 | | |
|   | For the Atlantic | FOX ROTHSCHILD, LLP |
| 19 | Coast Conference via | BY: MR. DAVID E. ALBRIGHT |
|   | teleconference: | 300 North Greene Street |
| 20 | | Greensboro, North Carolina 27401 |
| 21 | For the Institutional | JONES DAY |
|   | Defendants, Lead Counsel: | BY: MR. MATTHEW A. KAIRIS |
| 22 | | 325 John H. McConnell Blvd. |
|   | | Suite 600 |
| 23 | | Columbus, Ohio 43215 |
| 24 | For Certain Institutional | TUCKER ELLIS, LLP |
|   | Defendants: | BY: MR. JOHN Q. LEWIS |
| 25 | | 950 Main Avenue, Suite 1100 |
|   | | Cleveland, Ohio 44113 |

```
 1   APPEARANCES (Cont'd):

 2   For the Southeastern         ROBINSON, BRADSHAW & HINSON, PA
     Conference:                  BY:  MS. PEARLYNN G. HOUCK
 3                                101 North Tryon Street, Suite 1900
                                  Charlotte, North Carolina  28246
 4
     For Big Ten and              MAYER BROWN, LLP
 5   Lead Counsel for             BY:  MR. DANIEL L. RING
     Conference defendants:       71 South Wacker Drive
 6                                Chicago, Illinois  60606

 7   For the NCAA:                LATHAM & WATKINS, LLP
                                  BY:  MS. JOHANNA M. SPELLMAN
 8                                330 N. Wabash Ave., Suite 2800
                                  Chicago, Illinois  60611
 9
     For the Big 12 Conference    POLSINELLI, P.C.
10   and Conference USA via       BY:  MS. CAITLIN J. MORGAN
     teleconference:                   MS. LEANE K. CAPPS
11                                2950 N. Harwood St., Suite 2100
                                  Dallas, Texas  75201
12
     For Heartland Athletic       VAN VALER LAW FIRM
13   Collegiate Conference        BY:  MR. MARK HATFIELD
     via teleconference:          225 South Emerson Avenue, Suite 181
14                                Greenwood, Indiana  46143

15   Also Present:                MS. TANYA J. POTEET,
                                     Capital University
16
     Court Reporter:              MR. JOSEPH RICKHOFF
17                                Official Court Reporter
                                  219 S. Dearborn St., Suite 1232
18                                Chicago, Illinois  60604
                                  (312) 435-5562
19

20            * * * * * * * * * * * * * * * * *

21              PROCEEDINGS RECORDED BY
                MECHANICAL STENOGRAPHY
22           TRANSCRIPT PRODUCED BY COMPUTER

23

24

25
```

1  (Proceedings had in open court, in part via telephone
2  conference:)
3      THE CLERK: 16 CV 8727, NCAA Student Athlete
4  Concussion Injury Litigation.
5      If you can please state your name when you're
6  speaking, for the parties that are on the phone.
7      MS. SPELLMAN: Good morning, your Honor, Johanna
8  Spellman for the NCAA.
9      MR. KAIRIS: Good morning. Matt Kairis,
10 institutional lead counsel.
11     MR. RING: Good morning, your Honor, Dan Ring on
12 behalf of the Big Ten and standing in for Mr. Olsen on behalf
13 of the conferences.
14     MR. RICHMAN: Good morning, your Honor, Ben Richman
15 on behalf of the plaintiffs.
16     MR. WEISS: Sol Weiss on behalf of the plaintiffs.
17     THE COURT: Who do we have on the telephone, please?
18     MR. HEALY: Matt Healy on behalf of a plaintiff.
19     MR. ALBRIGHT: Erik Albright on behalf --
20     MS. MORGAN: Good morning, your Honor, Caitlin Morgan
21 and Leane Capps on behalf of the Big 12 Conference, on the
22 phone.
23     MR. ALBRIGHT: Erik Albright on behalf of the
24 Atlantic Coast Conference, on the phone.
25     THE COURT: Anyone else on the phone?

1           MS. POTEET:  Tanya Poteet --
2           MR. HATFIELD:  Mark Hatfield, your Honor, Heartland
3   --
4           MS. POTEET:  -- from Capital University.
5           THE CLERK:  One at a time, please.
6           MR. HATFIELD:  Mark Hatfield --
7           MS. POTEET:  Tanya --
8           MR. HATFIELD:  -- Heartland --
9           I apologize.  Go ahead.
10          MS. POTEET:  Tanya Poteet, Capital University.
11          MR. HATFIELD:  Mark Hatfield, Heartland Athletic
12  Collegiate Conference.
13          MS. MORGAN:  And, your Honor, just to clarify,
14  Caitlin Morgan and Leane Capps with Polsinelli.  We're
15  appearing on behalf of both the Big 12 and Conference USA.
16          THE COURT:  Anyone else on the phone?
17      (No response.)
18          THE COURT:  Okay.
19          MR. WHISTON:  Your Honor, Greg Whiston on behalf of
20  the defendant Mid-America Intercollegiate Athletics
21  Association.
22          MS. HOUCK:  Your Honor, Pearlynn Houck on behalf of
23  the Southeastern Conference.
24          MR. LEWIS:  Good morning, your Honor, John Lewis on
25  behalf of a number of institutional defendants.

1  THE COURT: Okay. Good morning, everyone.

2  So, we're here on plaintiffs' motion asking me to, in

3  their words, clarify the scope of the responsibilities of

4  liaison counsel and lead defendants' counsel in this case.

5  So, I read the briefs that were submitted by the

6  various interested parties with regard to the motion, but let

7  me ask the plaintiff this: So, the alternative to going

8  through liaison counsel and lead counsel is, what?

9  MR. RICHMAN: Your Honor, I'm going to answer the

10  question directly, but I would like to add a little context to

11  it.

12  We recently filed some 200 new actions. The

13  alternative would be to serve each one of the defendants in

14  each of those two actions, which we can, of course, do. Our

15  hope was to try and find some level of efficiency, in terms of

16  working through the appointed defendant lead counsel.

17  THE COURT: But you don't plan to serve them

18  personally, right? You intend to send -- serve them via

19  certified mail, asking for waivers of service?

20  MR. RICHMAN: Correct.

21  THE COURT: Okay.

22  MR. RICHMAN: But our hope was that through

23  communication with defense counsel -- which we've had many,

24  and there really haven't been any issues with that -- that we

25  could, again, find some level of efficiency, given -- you

1 know, not speaking technically, but -- that the NCAA is really
2 the body that represents all of these defendants; and, perhaps
3 there's some way we can communicate through lead counsel
4 rather than us speaking with 200 some-odd sets of potentially
5 new counsel.
6     Because, yes, we can put everything in the mail, but
7 then we're likely to get back communications from a number of
8 different counsel for different defendants and institutions.
9 And we're just hoping to, again, create efficiencies. Not
10 make things difficult for anybody, but try and find it where
11 we can in this case.
12     I think we see there's a lot of people represented in
13 the courtroom here just for this motion and the status today.
14 So, we're trying to cut down on that as much as possible.
15     THE COURT: I understand that. And that's, after
16 all, the purpose of MDL proceedings.
17     My concern, though, is that without the consent of
18 each and every one of the named defendants to be represented
19 by either Ms. Spellman or other lead counsel, I would think
20 the plaintiff would be concerned about due process problems if
21 I were to impose such a requirement from the top down.
22     I can't order a particular school or conference to
23 be -- to consent to Ms. Spellman's representation, nor can I
24 order them to consent to jurisdiction.
25     And, so, I understand the plaintiffs' goals in trying

1  to achieve efficiency, and, you know, I think they're
2  commendable; but, I don't know how we get around, you know,
3  that sticky problem of due process.
4              MR. RICHMAN:  Your Honor, just to be clear, as we
5  spoke about in the hallway, I understand that it's an up- --
6  it was an uphill battle for us to make that argument here.
7  But what I'm not suggesting right now is that we force any of
8  these defendants to be represented by any of these able
9  counsel.  The point is more that they have better insight into
10 who to be communicating with, and perhaps there's ways to
11 create efficiencies in that respect.
12             So, I just wanted to make that clear.  We haven't
13 reached an agreement, so I don't know if there's anything your
14 Honor can force them to do at this point.  But we wanted to
15 try, obviously.
16             THE COURT:  Well, so, for example, what sort of
17 information would be helpful to you in sending out the
18 summonses via certified mail?
19             I'm assuming that you have the addresses of the
20 institutions and the addresses of whatever their General
21 Counsel's office is.
22             MR. RICHMAN:  Sure.
23             THE COURT:  I guess I'm just trying to understand how
24 they could -- how you envision this working.
25             MR. RICHMAN:  I'm envisioning more something where,

1  for example, Ms. Spellman or her co-counsel might be able to,
2  through their client, the NCAA, reach out kind of in an
3  omnibus fashion to the defendants that have been named and are
4  part of their organization and see if there's some way we can
5  get a response about whether people are going to waive
6  service, things of that nature, rather than, like your Honor
7  said, dropping everything in a certified envelope and sending
8  it out several hundred times.  That's all.  That's really the
9  goal.
10              THE COURT:  Ms. Spellman?
11              MS. SPELLMAN:  Yes, your Honor.
12              Service of process is not, you know, an
13  administrative matter.  It's a due process requirement.  And
14  the rules are very clear that plaintiffs must comply with the
15  requirements set forth under Rule 4 to properly serve process
16  and make an entity a party to the litigation and subject to
17  the Court's jurisdiction.
18              I think your Honor is exactly right that plaintiffs
19  have, or have access to, the information that they would need
20  to serve process on these new defendants.
21              Having to serve process is a predictable consequence
22  of naming these new defendants in the new wave of cases.  I
23  don't see any justification in plaintiffs' briefing for
24  shifting responsibility for facilitating service of process to
25  the defendants or to liaison counsel or lead counsel.  It's an

1 obligation imposed on plaintiffs under the rules.

2 MR. KAIRIS: Your Honor, it may not be as large of a
3 problem as suggested. You know, there's now roughly 400
4 cases; in this new wave, you know, almost -- almost 300 of
5 them. There are no conferences named in the new wave of
6 cases. So, we're talking about either the NCAA -- which is
7 named in every case -- or a number of institutions.
8 Institutions are only named in 96 of those cases.

9 The NCAA, my understanding, has waived service for
10 itself. So, all of those cases that involve the NCAA only,
11 that just whittles it down to 96 cases.

12 And I'll tell you from -- you know, the reaction from
13 hearing about these cases being filed has run the complete
14 gamut. I'm sure there are still schools that have no idea
15 that any of this exists. I've gotten calls from school
16 presidents for small universities that say, we don't have a
17 General Counsel office; we don't even have dedicated outside
18 counsel; I'm not going to devote any resources of this
19 institution to even talking to you or anybody else until I
20 actually have been sued, because maybe this will all just
21 disappear and I'll never get served.

22 So, it's -- you know, it's very difficult --
23 THE COURT: That's wishful thinking.
24 MR. KAIRIS: You know, I certainly don't have a
25 package to deliver with any -- and I don't even know if any --

1   certain of the people that I talked to are actually the
2   registered agents. I would think, you know, if you sue an
3   institution which is a corporation, as they pointed out in
4   their papers, you can find their registered agent and you can
5   drop it in the mail. And that starts a process where those
6   schools either retain counsel or become involved in this MDL,
7   where there's a communication stream between liaison and lead
8   counsel.
9          And from there, I think there are going to be a lot
10  of efficiencies under Rule 5, as far as serving papers and
11  pleadings and the like.
12         But this is just a whole different game because a lot
13  of these people just don't want to pay attention to this until
14  they've been sued according to due process.
15         THE COURT: Okay.
16         Anything anyone else wants to add?
17         MR. RICHMAN: No, your Honor.
18         MR. WEISS: No, your Honor.
19         THE COURT: All right.
20         So, as I said, I understand the impetus behind
21  plaintiffs' motion to try to streamline matters. And I'm all
22  for streamlining matters or trying to streamline matters. It
23  would be one thing if all Ms. Spellman had to do was send out
24  an e-mail to whatever school was sued and say, hey, do you
25  waive service of process? But, invariably, that will elicit

1  questions back to Ms. Spellman which may kick off an
2  attorney-client relationship, that also would put Ms. Spellman
3  in a very difficult spot because she's representing the NCAA
4  and those interests, while mostly aligned, may not be
5  completely aligned either now or later.
6       And, so, I think that while in the broad scheme of
7  things the request seems interesting enough to explore, when
8  you get down to where the rubber meets the road, it just
9  raises a host of other issues that I think would, in the end,
10 end up just delaying things more rather than accomplishing the
11 goals that the plaintiff would like to accomplish and, I know,
12 the parties would like to accomplish, which is trying to do
13 this in an expedited manner.
14      Furthermore, I think it does present some due process
15 issues.  These defendants are entitled to be served.  And they
16 can waive service, but they have to do so by either a duly
17 authorized representative or their own attorneys, which a lot
18 of them don't really have at this point or may have different
19 attorneys than Ms. Spellman; or, they may perhaps look to
20 Ms. Spellman and other lead counsel for that legal advice,
21 which they can't really provide.
22      And, so, the fact that they're designated as lead
23 counsel -- that's the nomenclature that's often used -- is
24 lead counsel just as a matter of administratively coordinating
25 all of these MDLs for the purpose of litigation.  It doesn't

1   mean that I've appointed them as attorneys for anyone who's
2   been sued.  And that's what would be required under the due
3   process clause and under Rule 4.  And I just don't have the
4   authority to do that.
5            So, again, while the sentiment behind the motion is
6   laudable, the motion is denied.
7            I know that there are three motions to dismiss that
8   remain pending.  I know the parties are anxious to get this
9   entire proceeding on the road, which I am, too.  Believe me.
10  And, so, I just want to let the parties know that I will be
11  issuing those rulings on the remaining motions to dismiss in
12  the next 30 days.  Okay?
13           MR. RICHMAN:  Thank you, your Honor.
14           MR. WEISS:  Thank you, your Honor.
15           MS. SPELLMAN:  Thank you, your Honor.
16           THE COURT:  Thank you.
17                   *     *     *     *     *
18
19  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
20
21
    /s/ Joseph Rickhoff                       June 3, 2019
22  Official Court Reporter
23
24
25