**1**

```
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE ATHLETIC        )
     ASSOCIATION STUDENT-ATHLETE                 )  MDL 2492
 4   CONCUSSION INJURY LITIGATION                )
     SINGLE SPORT/SINGLE SCHOOL (FOOTBALL).      )
 5   ----------------------------------------    )
     CHRISTOPHER BURKHOLDER, et al.,             )
 6                                               )
                                                 )
 7             Plaintiffs,                        )
                                                 )
 8        vs.                                    )  No. 16 C 8727
                                                 )
 9   WAKE FOREST UNIVERSITY, et al.,             )  Chicago, Illinois
                                                 )  March 22, 2023
10             Defendants.                        )  9:30 o'clock a.m.

11                  TRANSCRIPT OF PROCEEDINGS -
                            Hearing
12            BEFORE THE HONORABLE MANISH S. SHAH

13
     APPEARANCES:
14
     For the Plaintiffs/NCAA  EDELSON, P.C.
15   Putative Classes:        BY:  MR. JAY EDELSON
                                   MS. AMY HAUSMANN
16                            350 North LaSalle Street, 14th Floor
                              Chicago, Illinois  60654
17                            (312) 589-6375

18
     For Defendant MIAA:      SEIGFREID BINGHAM, P.C.
19                            BY:  MR. GREGORY B. WHISTON
                              2323 Grand Boulevard, Suite 1000
20                            Kansas City, Missouri  64108
                              (816) 421-4460
21

22   For Defendant NCAA:      LATHAM & WATKINS, L.L.P.
                              BY:  MR. MARK S. MESTER
23                                 MS. JOHANNA M. SPELLMAN
                              330 North Wabash Avenue, Suite 2800
24                            Chicago, Illinois  60611
                              (312) 876-7700
25
```

**2**

1    APPEARANCES (Continued):

2

3    For Defendant              JONES DAY
     Institutions:              BY:  MR. MATTHEW A. KAIRIS
4                               325 John H. McConnell Blvd., Suite 600
                                Columbus, Ohio  43215
5                               (614) 281-3605

6

7    For Big Ten Defendants/    MAYER BROWN, L.L.P.
     lead counsel for          BY:  MR. MICHAEL A. OLSEN
     conferences:                   MS. GINA A. JORDT
8                               71 South Wacker Drive
                                Chicago, Illinois  60606
9                               (312) 782-0600

10

11   For the Southeastern       ROBINSON, BRADSHAW & HINSON, P.A.
     Conference:                BY:  MR. ROBERT W. FULLER
12                              101 North Tryon Street, Suite 1900
                                Charlotte, North Carolina  28246
13                              (704) 377-8324

14

15

16

17

18

19

20

21

22
             COLLEEN M. CONWAY, CSR, RMR, CRR
23                 Official Court Reporter
           219 South Dearborn Street, Room 1918
24               Chicago, Illinois  60604
                      (312) 435-5594
25           colleen_conway@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2    THE CLERK:  16 CV 8727, National Collegiate Athletic

3    Association Student-Athlete Concussion Injury Litigation.

4    THE COURT:  Good morning, everyone.  Nice to see

5    everybody in person.

6    We had everyone sign in, so your appearances are

7    noted for the record, so we're not going to take roll now.

8    So let's talk about what we're doing here and what

9    we're doing next in light of the status report and the proposal

10   for class certification and a change in approach for class

11   certification.

12   I suppose the best way for me to start is just with

13   some questions for plaintiffs.

14   If this new approach to seek issue certification --

15   first, let me make sure I understand correctly that, at least

16   in the four sample cases, plaintiffs are not seeking to certify

17   a class under 23(b)(3) at all.

18   Do I have that much right?

19   MR. EDELSON:  Yeah.  Your Honor, Jay Edelson, lead

20   counsel.  That's correct.

21   THE COURT:  Then -- but you're not taking that

22   position with respect to the other cases in the MDL?

23   MR. EDELSON:  No.  But I think it's fair to -- for

24   everyone to see that as a signal of where we might go.

25   THE COURT:  So my question is, then, why are these

1    even sample cases?  If I don't know now that they are, in fact,

2    representative, what are we doing with these as sample cases?

3            And if the approach is going to be, there is not

4    going to be a 23(b)(3) class, and ultimately these will be

5    individual, at least as to judgment, then the next question is,

6    what is this MDL for?

7            But that's a little bit later --

8            MR. EDELSON:  Okay.

9            THE COURT:  -- in my thinking.  But at least let me

10   better understand -- and this is before my time.  But you

11   selected these sample cases, and you were going down this path

12   with these sample cases, and now, without any kind of

13   confirmation that they are, in fact, representative of all the

14   other cases, I am concerned that maybe these aren't the right

15   samples.

16           MR. EDELSON:  May I address that now?

17           THE COURT:  Please.

18           MR. EDELSON:  I understand that concern.  The -- so

19   when we picked the sample cases, Judge Lee was explicit that,

20   based on the rulings, it may be that parties start adapting and

21   changing theories, et cetera.

22           To be clear, as I said, everyone should take this as

23   a pretty clear signal to where we are going.  So unless Your

24   Honor does something which we don't expect, or there's a change

25   in -- you know, a Seventh Circuit case comes down, no one knows

1    about, we are going to proceed under the same theories.

2         The only caveat I want to have is that these are

3    specific cases.  And it may be in one of the other cases that

4    there is a way to have a damage class certified.  Again, I

5    don't expect that.  But those would be the exception.

6         If you ask me to predict what's going to happen, they

7    will proceed like these are proceeding.

8         THE COURT:  When would you know whether there is ever

9    going to be a (b)(3) class in these cases?

10         MR. EDELSON:  Well, the -- I guess they're not going

11    to be (b)(3) classes in these cases, Your Honor.

12         So the only way something like that would happen

13    would be if we found something which we're not going to find

14    discovery in other cases, or if there was some significant

15    change in the law in the, you know, Seventh Circuit or Supreme

16    Court.

17         So those aren't real possibilities.  We're --

18    honestly, we're just being lawyers and just saying, you know,

19    we don't know what the future holds.  But --

20         THE COURT:  Understood.  But in order for me to

21    manage things going forward, I think it's best for me to get

22    commitments as solid as I can get them so that I understand

23    what we're looking at.

24         And if you are saying that there is not going to be a

25    (b)(3) class, let's just say, in these four sample cases, if

1    you're saying that and announcing that now, a question I have

2    is, what kind of class actions are they, then?  Are these

3    (b)(1) class actions?  (b)(2) class actions?  They're not

4    (b)(3) class actions.

5           Just looking at the rule, you've got 23(a) and then

6    you've got 23(b) that says:  There are the following types of

7    class actions.  What type of class action is this before we get

8    to 23(c)?

9           MR. EDELSON:  Amy, do you want to handle that or am I

10   putting you on the spot?

11          These are issue classes under (c)(4).

12          THE COURT:  Right.  But 23(b) identifies the types of

13   class actions under the rule:  "A class action may be

14   maintained if Rule 23(a) is satisfied and if," then you've got

15   (b)(1), (b)(2), and (b)(3), before you get to (c).

16          So you've said this is not a (b)(3) class.  I don't

17   think this is a (b)(2) class.  So then I think that leaves

18   (b)(1).  But I just want to make sure I know what your position

19   is.

20          MR. EDELSON:  Your --

21          MS. HAUSMANN:  I think (b)(1), Your Honor.  I think

22   (b)(1) is satisfied and then you can move on to (c)(4).

23          THE COURT:  If these are cases that are amenable to

24   issue classes, then what's the vision going forward?  Then

25   seeking partial summary judgment on the merits of those issues?

1   Is that what the plan would be for plaintiffs?

2           MR. EDELSON:  So we're actually doing this in a

3   parallel case, the *Portland Wildfires*, where the court

4   certified an issues class.

5           The way it proceeded was either side had an

6   opportunity, of course, to seek summary judgment on the issues.

7   In the *Portland* case, it's going to trial.  And so the trial

8   will be as to liability.

9           And so going back to this case, if this happened and

10  we certified it, and then the defendants won, as you know, case

11  over, everybody's claims are extinguished.  If we win, then it

12  goes -- as traditionally happens in an issues class, it goes to

13  the next phase, which would be individual damage trials, but

14  liability will have been established.

15          THE COURT:  But would liability be established on the

16  issues that you're proposing?

17          MR. EDELSON:  Your Honor, you're --

18          THE COURT:  It seems very different to me.

19          MR. EDELSON:  No, no.  You're correct.  I spoke

20  imprecisely, and I appreciate that.

21          It's not -- it wouldn't be total liability.  It would

22  be on these issues.  So certain key issues would be decided.

23          And certainly those issues are significant enough

24  that the main defenses of -- for the NCAA and its member

25  institutions and the conferences, if they won, it would dispose

1    of the whole case.

2           But you are correct, it wouldn't just be damages,

3    because they would have other arguments, too.  Causation would

4    be one argument.

5           THE COURT:  And you would have other elements to

6    prove.

7           MR. EDELSON:  That --

8           THE COURT:  If you prevailed on, say, an issue of

9    whether there is a duty, that's not enough for liability to be

10   established.

11          MR. EDELSON:  The -- correct.  Although, although I

12   think that -- we haven't finished discovery in all of these,

13   but I -- what our hope would be would be to get as many issues

14   as possible, including whether that duty was violated.

15          THE COURT:  That's not your proposal.

16          MR. EDELSON:  We -- I understand that.  We had -- of

17   the four sample cases, in one case, we got 10,000 documents; in

18   the other three cases, we haven't gotten any documents.

19          THE COURT:  Well, that is what it is.  I am just

20   trying to understand what the approach is and what the plan is.

21          And in your position, you've identified the general

22   issues.  And I understand that you didn't pin yourself down

23   that these are the only issues that you are going to seek

24   certification on.  But I think in order to have a meaningful

25   discussion, I took your statement to be here's the framework

1    for what you're thinking about.

2            And, as I thought through them, I thought:  Well, if

3    we certify an issue class -- that's one step -- that doesn't

4    answer the question that's posed by the issue.  It's just

5    saying this issue is amenable for class-wide resolution.

6            But then does the answer to the question that's posed

7    by the issue, does that even resolve the case?  And if it

8    doesn't, then what are we talking about?  We're talking about

9    either partial summary judgment or a trial on an issue that

10   then does not resolve in a final judgment of any kind.  And

11   what kind of trial is that?  Is that even a constitutional

12   trial if a jury is -- if it requires a jury?

13           So I am trying to think through what's the end game

14   here so that I can understand how best to manage the puzzle

15   right now.

16           So that was just me talking to give you an

17   opportunity to think, so that we can try again and say:  Well,

18   what happens if I certify these kinds of issues?  What would

19   the next stage of the case be?  And if it doesn't resolve in a

20   final judgment, resolving the case or controversy in the sample

21   case, what are we doing?

22           And am I going to send all of these cases back for

23   individual adjudication in their respective districts?  Or is

24   this still really the purpose of the MDL that was sent here in

25   the first place?

1          MR. EDELSON:  Your Honor, so a couple points.

2          First, I appreciate the discussion.  I understand

3    where you're coming from.

4          Obviously, our preference would be that we discuss

5    this through the briefing, where we move for the issues class.

6    They respond, making some of these points Your Honor's making.

7    We would obviously now know to address them in the motion

8    itself and let Your Honor consider that.  That would give us

9    more of a chance to reflect on it.

10         I can say, as a practical matter, if these common

11   issues are decided, we are going to be -- I hate using a

12   football metaphor given the case, but at the ten-yard line.

13         So these cases have been proceeding in federal court,

14   but also state court where they started to be tried, and

15   that the major defense -- I'm speaking for myself.  They may

16   have other views -- the major defense is whether a duty was

17   owed, especially by the NCAA.

18         If that is determined on a class-wide basis -- the

19   whole point of -- I believe, of sample cases is to inform the

20   parties about how best to approach more general, including

21   settlement.

22         If we go to trial and lose, that is going to inform

23   settlement.  My guess is the settlement value will be nothing.

24   If we win on that, then we will sit down and say:  Okay.  We

25   now can do thousands of trials, which I think is what would

1    happen, and they'd go back to their original districts, or we

2    can try to come up with some sort of matrix.  I think that's

3    the whole point of sampling.

4              THE COURT:  I mean, I agree that that's the point of

5    sampling.  I am wondering if this shift in approach is

6    achieving the goals of sampling or not.

7              There are many decision points in a case.  And issues

8    can get resolved at different points in a case that will affect

9    settlement value.  I get that.

10             And I am all in favor of finding creative ways to cut

11   to the chase so that people can make informed decisions.

12   That's all well and good as well.

13             Let me shift gears to ask about the personal

14   jurisdiction issue that was raised in the status report and

15   plaintiff wanted some more time to think about that.

16             What's your position about the personal jurisdiction

17   issue raised by the SEC?

18             MR. EDELSON:  Well, so if -- this approach of we're

19   going to unstay the cases and then everyone submits one

20   declaration and then the Court decides, that would not be

21   something we would think would be appropriate.

22             So if Your Honor wanted to entertain personal

23   jurisdiction motions, then we have to do it, we think, in the

24   proper way, which would entitle us to get discovery, including

25   deposing people.

1       And this is not an academic argument.  We've done

2   this in a separate case with BYU, where they said:  Oh, we're

3   not involved in California at all.  No jurisdiction.  And then

4   when we actually got discovery, we found out that they did an

5   incredible recruiting effort in California, private

6   helicopters, et cetera.  And we ended up winning on that issue.

7       So I think the whole point of staying these other

8   cases is to have them stayed.  If the Court thinks it's

9   important to start deciding some other issues, we don't have an

10   issue with that.  We don't have a problem with that.

11       THE COURT:  Do you think that BYU example is

12   applicable to the conference argument on personal jurisdiction

13   that has apparently been resolved, at least in the *Richardson*

14   case here?

15       MR. EDELSON:  The -- what activities the conference

16   participated in in Illinois would be relevant.  Obviously, it

17   shifts.  It's different than a school that's recruiting.  But

18   the conferences do a lot of work in other states.

19       That's our belief.  If we're wrong, then, you know,

20   then we're wrong, and we'll say that.

21       THE COURT:  Are there other cases, stayed cases, that

22   are exactly on all fours with the prior ruling in this case on

23   lack of personal jurisdiction?

24       So is there even a -- would you agree that there's at

25   least a subset that is essentially not going to be

1  individualized in light of the existing ruling?

2  MS. HAUSMANN: There may be other cases, Your Honor,

3  in which the SEC was named as a defendant, and so some of the

4  same facts would apply.

5  I think that it does depend on exactly what school.

6  I don't know if the SEC has different recruitment efforts for

7  different colleges.

8  But there's also just, I think, a practical matter of

9  logistics here. The cases are stayed. And so even if the

10  Court were to deny personal jurisdiction in the Northern

11  District of Illinois, we could -- in many states, we would be

12  able to re-file in an original court and then transfer back

13  into the MDL.

14  And so, you know, our belief is that if the cases are

15  stayed, there's not really much utility in going through that

16  process now as opposed to later when those cases are unstayed.

17  THE COURT: Does -- can I call on someone on the

18  defense side for the SEC to talk about the personal

19  jurisdiction issue?

20  MR. FULLER: Yes. Your Honor, Robert Fuller with

21  Robinson, Bradshaw & Hinson representing the SEC.

22  We're no longer a defendant in any of the sample

23  cases, now that we've been dismissed from *Richardson*.

24  And the reason that we've made our submission through

25  the status report, in the cooperation of the others, is there's

1   an order somewhere in this case that doesn't let anyone file
2   something unless they're counsel for -- a lead counsel in a
3   sample case.

4           A couple of things that I wanted to correct.

5           The issue is not whether there's personal
6   jurisdiction in Illinois.  The issue is whether there's
7   personal jurisdiction in the original transferor court.

8           The judge -- Judge Lee explicitly denied the request
9   for discovery in the *Richardson* case, holding there was nothing
10  to discover.

11          And I think we all know, as a matter of common sense,
12  that the SEC doesn't recruit players.  The schools do.  They
13  would not be very happy if we took sides on that.

14          The way we see this, these cases have been
15  centralized for MDL proceedings.  A threshold issue in every
16  case is whether there's personal jurisdiction.  It's perfect
17  for coordination.  There's clearly not personal jurisdiction in
18  a number of the cases.

19          And there's really no reason to kick this can down
20  the road, because if we come back in a year, two years, three
21  years, we're still going to have to address the personal
22  jurisdiction issues.

23          So whatever's going on with class certification,
24  issue classes and so forth, it seems to us more efficient to
25  get the personal jurisdiction issues out of the way.  Your

1    Honor can rule on them.  You can assign them to a magistrate.

2    We could use the abbreviated procedure we suggested or we could

3    just file motions.

4         To make it clear, we're not seeking to unstay all

5    these other cases.  We just think it would be efficient and

6    prudent to get the cases -- if they're going to re-file in what

7    they think is the right jurisdiction, they can have at it.  But

8    we're going to have to go through that process before there's

9    any personal jurisdiction over any of these cases.

10        And we've been a defendant now since 2016 in cases

11   where we don't think there's any personal jurisdiction.  We'd

12   like to get that clarified.

13        THE COURT:  As a formal matter, though, wouldn't I

14   have to, at a *minimum*, modify the stay of the other cases in

15   order to pass some sort of judgment on personal jurisdiction in

16   them?

17        MR. FULLER:  I think that's logically true.  But I --

18   what I mean is we're not asking for a wholesale lifting of the

19   stay.  We think this one issue can be presented, if a defendant

20   wants to present it.  We would like to go ahead and present it.

21   If some defendants want to remain stayed, that would be

22   obviously up to them.

23        THE COURT:  The NCAA didn't take a position on

24   whether they would want to take advantage of this or not.

25        As much as I was trying to pin one side down, can I

16

1    try and pin the other side down?

2            And so what are you really doing here?  And we're all

3    here together right now.  Can you tell me what the NCAA's

4    position on personal jurisdiction is?

5            MR. MESTER:  Thank you, Your Honor.  Mark Mester for

6    the NCAA.

7            We weren't trying to be evasive, but I don't think we

8    have anything near the personal jurisdiction argument that

9    Mr. Fuller and the SEC does, in large part because the vast

10   majority of these cases were filed in Indiana and were in

11   Indiana.

12           So I -- it was more not thinking about it much.  I

13   don't want to -- in the same way, I want to be careful as a

14   lawyer.  I don't want to say never.  But I don't think we are

15   in any way, shape, or form in the same position that the SEC or

16   other conferences and institutions are.

17           MR. KAIRIS:  Your Honor, Matt Kairis with Jones Day,

18   lead counsel for the institutions.

19           There's about 110, 115 institutions in the stayed

20   cases.  And just straw-pulling, probably more than half of

21   those would be interested in pursuing the same personal

22   jurisdiction path that the SEC is raising.

23           And when you think about it, included among those

24   schools are extremely small schools with small football

25   programs that never leave their state footprint and don't

1   recruit outside of the state.  And most of those schools were

2   sued in Indiana.  You know, the vast majority of them likewise

3   have had a lawsuit hanging over their head for five-and-a-half

4   years and feel strongly there's no personal jurisdiction for

5   those cases.

6           There's other institutions in the group that wouldn't

7   pursue personal jurisdiction or would kind of abide by the stay

8   and preserve that argument, to make it down the road, but

9   there's a significant number of institutions that believe that,

10  under the *Richardson* decision, they equally would have an

11  immediate path to challenge personal jurisdiction.

12          MS. HAUSMANN:  Could I respond very briefly to that,

13  Your Honor?

14          THE COURT:  Sure.

15          MS. HAUSMANN:  Just to say that the *Richardson*

16  decision -- each of these motions is likely to be fairly

17  factual, whether each school, their recruitment efforts, how

18  often they were meeting with NCAA officials in Indiana,

19  questions like that.  And so I don't think that the *Richardson*

20  decision is particularly binding across, you know, all of these

21  different member institutions.

22          THE COURT:  Well, one option might be to start with

23  maybe just the SEC and the cases in which the SEC has been

24  named as a defendant and see if there's a bucket of cases there

25  that don't require further factual development, because the

1    *Richardson* decision is squarely on point for that.  And then if

2    that somehow is able to be resolved, that might then serve as a

3    model for other personal jurisdiction arguments.  But there

4    might very well be hundreds of defendants where the question of

5    personal jurisdiction is going to be more fact-dependent and

6    would require time and effort that maybe we shouldn't be

7    spending on if the whole point of where we are today is that

8    there are supposed to be these four cases that are samples that

9    are supposed to guide everybody in a useful and cost-effective

10   way.

11           So I don't think there's much more to be gained by

12   talking about this personal jurisdiction issue.  I think I need

13   to think a little bit more about what might make sense to see

14   if that issue can be raised now, and in what form.  So I'll

15   have to give that some more thought.

16           On the class certification issues, one thing that I

17   am thinking about is before you do any more discovery on class

18   certification, there might be an opportunity to tee up some of

19   these issues now, as in:  Does there need to be an amended

20   complaint?  Is continuing down the path of issue class

21   certification actually going to be a cost-effective and

22   meaningful way to sample these cases?

23           In light of what the end game might be, if issue

24   classes are certified, maybe we should talk about that and get

25   firmer legal grounding on what would be happening before you

1    continue down discovery on class certification.

2         So that's one thought.  We haven't talked about

3    whether there needs to be an amended complaint or not, so why

4    don't we talk about that, just briefly.  And I'll ask the

5    defendants to talk about this a bit.

6         My initial take is that there's probably not a

7    requirement that there be an amended complaint.  My takeaway

8    was the defense might want an amended complaint that formally

9    doesn't say anything about 23(b)(3) or omits 23(b)(3), perhaps

10   so that you can say *American Pipe* tolling is over now, because

11   this pleading has been filed that does that.

12        So my question is, is that actually necessary, do you

13   think, from the defense perspective?  Or are some of the things

14   that they've said today or said in their status report enough

15   to say that they've abandoned 23(b)(3), at least as to the

16   sample cases, so it is what it is?

17        I don't really think of an amended complaint or the

18   original complaint as some kind of notice device to absent

19   class members.  I don't think that's what complaints are for.

20        So that was some of my reaction to what was going on

21   in the status report.  But is there something more you want to

22   say about the idea of amended complaints?

23        MR. MESTER:  Yes, Your Honor.  Mark Mester again for

24   the NCAA.

25        I think there's a variety of reasons why it would be

1    prudent, whether it's required or not, to have an amended

2    pleading, and I think a couple of those reasons were actually

3    illustrated today.

4            I think if there's going to be an issues class -- and

5    for the reasons we set forth in the status report, we think

6    there shouldn't be.  But if there's going to be one, I think we

7    definitely want to know what those issues are before we go to

8    take discovery.

9            And just today, we heard Mr. Edelson throw in a new

10   issue that's not in the status report, and that was whether or

11   not we had violated a duty.  That's nowhere to be found in the

12   status report.

13           But what I certainly wouldn't want to do is to have

14   Your Honor set a schedule and have us go take discovery, and

15   then have them file their motion for class certification with

16   new issues, and then we come back to you and say:  Well, now we

17   need to take more discovery on issues that were identified.

18           So I think that's one of several benefits.  I do

19   think there are other benefits, though, not the least of which

20   being it is notice to the class.  Is it an imperfect notice to

21   the class?  Certainly.  It's not the same as sending out a

22   postcard or an e-mail.  But my sense is there's a number of

23   counsel out there in the country that are following these

24   cases.

25           We've been approached by potential claimants who may

1    or may not want to pursue an individual case against the NCAA,

2    and they're watching the docket. And I think an amended

3    complaint that does away with the (b)(3) class claim and that

4    replaces it with a (c)(4) claim with identified issues would be

5    a signal to those people and something that they'd want to take

6    into account in deciding whether or not to pursue a class

7    claim -- I mean, excuse me, an individual claim. So I think

8    that is a benefit.

9         In terms of your tolling question, Your Honor, I

10   think certainly a stipulation today or an indication from Your

11   Honor that the (b)(3) claim is now out, the damages claim is

12   out would probably be sufficient for purposes of that line in

13   the sand, so to speak, for purposes of determining tolling.

14        But I think the clarity that would be provided by an

15   amended pleading would be helpful for a number of other

16   reasons.

17        THE COURT: Have you given any thought procedurally

18   how to more formally tee up and resolve these issues? For

19   example, a motion from the defense to compel amendment of the

20   complaint? Or a motion from the plaintiff to amend a proposed

21   class definition? Some procedural vehicle that's maybe

22   superior to status reports to crystalize the debates that we're

23   having so that then I can chime in and figure out how to do

24   this?

25        All of which is harkening back to what I said just a

1   few moments ago, which is I think there are some things to

2   figure out now before you go further down the road of

3   discovery, class certification discovery.

4          So I am trying to figure out, what is that mechanism?

5   If it exists.  Maybe it doesn't exist.  Maybe it's just you

6   need some guidance from me.  But then you have to do discovery

7   and then we do a traditional motion for class certification.

8          MR. EDELSON:  Your Honor, Your Honor, I know this

9   wasn't directed, but perhaps I can be helpful --

10          THE COURT:  Go ahead.

11          MR. EDELSON:  -- with a solution.

12          So I -- we actually don't need to do more discovery

13   so long as the discovery that was done in the state courts can

14   be used in our cases.

15          And we would agree only for purposes of class

16   certification.  If they've got issues about merits and

17   everything, fine, we can deal with that later.  What that would

18   allow us to do is move very quickly.  And then we can present

19   these arguments.  And if they want to say:  Oh, no.  You've got

20   to create a new rule where you've got to amend a class

21   definition, which would be a disaster if that's a rule --

22   because in every class action, you file a complaint and then

23   you take discovery, and the class can change.  And that's what

24   happens.  And it can change now or in the middle of discovery

25   or after discovery.  But we can deal with all that then.  They

1    could make those arguments:  You know, the plaintiff should

2    have amended, and deny certification because of that.

3           In terms of kind of the practical thing of other

4    lawyers need to know what's happening in the case, I am pretty

5    confident Law360 will alert them.

6           But also, this is not an unwieldy group of lawyers.

7    We're all talking.  They know this.  There's a large steering

8    committee of people who've got federal cases and state cases.

9           And a solution of some sort of stipulation is totally

10   fine.  If anyone wants more clarity, we are not pursuing a

11   (b)(3) class in the four sample cases, nor do we expect in the

12   other cases to be pursuing it, absent something which is not

13   conceivable to me.

14          You know, I've -- I'm speaking kind of as plainly as

15   I can.  And I don't mind putting that in a stipulation, if

16   that's of some help.

17          THE COURT:  In your proposal, you were seeking a

18   deadline of June 2nd for completion of fact discovery on issues

19   relating to class certification.  What you just said suggested

20   that you're ready to go now if you can use the discovery from

21   the state cases, so -- but maybe I'm misinterpreting what you

22   were just saying.

23          MS. HAUSMANN:  That was in part for the defendants'

24   benefit, Your Honor.  They have not yet deposed our class reps.

25   And we agree that deposing the class reps would be a reasonable

1    thing to do before moving for class certification.  So that, I
2    think, is, in large part, the reason for the June 2nd fact
3    discovery deadline.

4                MR. MESTER:  Your Honor -- I'm sorry.

5                THE COURT:  Go ahead.

6                MR. MESTER:  If I may?  Just two quick points.

7                On the issue of the discovery from the state cases.
8    And I recognize that was not a focus of the status report.  And
9    this is certainly a voluminous record.  But that issue, in
10   fact, has already been fully briefed and decided not only by
11   Magistrate Judge Weisman, who denied their motion to get that
12   discovery, but then affirmed by Judge Lee on a Rule 72
13   objection.

14               So I think that issue is decided.  And there are a
15   variety of reasons why that doesn't make sense, and they're all
16   set forth in the briefing.

17               But what I am troubled by, Your Honor, is we're six
18   years in; and at some point, they do have to put their cards on
19   the table and they have to stick with it.  And there's irony in
20   that, because the primary case that they relied upon in their
21   status report was *Chapman*, the Seventh Circuit decision, and
22   that's exactly -- putting aside the dicta, that was exactly the
23   ruling in that case.  Judge Ellis decided four-and-a-half years
24   was enough time, that you need to put your cards on the table
25   and you need to stick with it.

1      And this inability to pin them down and not know what
2  we're doing discovery for is a problem, having taken already a
3  fair amount of discovery on damages, only to find out that that
4  discovery may be just out the window.

5      I am sensitive, and, as you can imagine, Your Honor,
6  our client is sensitive, and all the member institutions and
7  conferences are sensitive as well.

8      The last point and then I'll stop.

9      I think there's a real problem if there's a disparity
10 between the sample cases and the non-sample cases, and it goes
11 back to the issue I raised earlier.

12     If there's a recipe for confusion amongst absent
13 class members, that seems to me it's it.  Because if I'm an
14 absent class member in a non-sample case, am I going to be able
15 to distinguish between what's going on in the sample cases,
16 which I naturally assume is indicative of what's happening in
17 the non-sample cases?  That's a pretty fine line, and it's
18 asking a lot of a lot of people.

19     So I think there's a lot of reasons, and this is only
20 one of them, but to have symmetry between the sample cases and
21 the non-sample cases.

22     THE COURT:  But the only asymmetry right now is this
23 (b)(3) now, right?  There's no asymmetry in the issues that
24 they're flagging for a potential class certification.

25     MR. MESTER:  Your Honor, with respect, I don't know.

1    I mean, they won't even commit to the non-samples being no
2    longer (b)(3).  So I literally don't know.
3              THE COURT:  They've come close.
4              MR. MESTER:  They've come close.
5              MR. OLSEN:  Your Honor, Mike Olsen, lead counsel for
6    the conferences.  Two quick points.
7              Just one addition to counsel's comment about
8    discovery.  She's right, we need to take the class reps.
9    Whatever path we choose.  There are also a handful of document
10   issues that are part of those class rep deps.  We're going to
11   move quickly.
12             Whatever plan we decide on, with Your Honor's help,
13   to complete that.  But just wanted you not to be surprised.  If
14   we can't work that out, there may be some limited document
15   issues that come to your attention in the near term.
16             The second point, just to pile on, with respect to
17   the last issue you were discussing.  That's the whole point of
18   what we've been doing for the five-and-a-half years, is to
19   create an MDL with sample cases that's going to efficiently
20   resolve these issues.
21             And to say that:  The (b)(3) issue may or may not.
22   We can't tell you now.  We don't think it's going to be
23   different.  But that could be different if we lose class
24   certification on these issues, or something else happens, or
25   whatever else might be different with respect to new issues or

1    different things, kind of defeats the entire purpose of what

2    the MDL was set up to do.

3            And so whether it's a stipulation or some kind of

4    motion vehicle that provides clarity as to what issues they're

5    attempting to seek certification on, and that the (b)(3) issue

6    is dead across the cases, we think that's imperative with

7    respect to the MDL.

8            THE COURT:  Can we circle back to the question that I

9    asked, which is, what is the procedural mechanism to tee these

10   up, other than what might be a perfectly correct procedural

11   vehicle, which is a motion for class certification?  What other

12   procedural vehicle would the defense have in mind?

13           MR. MESTER:  Sorry, Your Honor.

14           I -- the one that comes first to mind is a motion for

15   leave to amend that includes a proposed complaint that has

16   attached to it -- attached to the motion that has the issues

17   that they are going to seek to have certified identified.

18           I think that's how it typically would be done.  And

19   that motion then would raise a number of avenues, issues that

20   could be raised with respect to timeliness, with respect to the

21   implications for the sample case, and also issues of futility.

22           So I think all of those would come into play.  And a

23   motion for leave to amend would be, I think, as apt a candidate

24   as any.

25           THE COURT:  Do you think there's such a thing as a

1    motion to compel plaintiffs to amend the complaint?

2         MR. MESTER:  Your Honor, my mentor filed a motion to

3    lodge one time, so I guess there's any motion.

4         I admit, I hadn't thought of that.  But I'm sure that

5    could be done.

6         I mean, I do think there is a -- and I don't mean to

7    be flip about it, but there's a need to get clarity and to lock

8    this down.  Because I know Your Honor's going to want us to

9    complete discovery in the near term.  And I'm very concerned

10   that if it's a moving target, we're going to, again, take a lot

11   of discovery that's not going to be relevant to the motion that

12   gets filed, the motion for class certification.

13        MR. EDELSON:  Your Honor --

14        THE COURT:  Hold on.

15        MR. EDELSON:  I apologize.

16        THE COURT:  Do you think there's any need for more

17   clarity right now in advance of taking the class rep

18   depositions or the lingering document issues that were just

19   flagged?

20        MR. MESTER:  I certainly do, Your Honor.  We need to

21   know what the issues are in order to depose the named

22   plaintiff, provided that the specter or the prospect of an

23   issues class is still in play.

24        MR. OLSEN:  And, Your Honor, it would certainly be

25   relevant to the expert discovery that would follow, then.

1    THE COURT:  Well, I think the -- I do see how the

2    expert discovery would be dependent on what the potential class

3    definition is/issue, the articulation of the issue, but I am

4    shifting gears slightly to think about:  What are you going to

5    do in the next few weeks while I'm mulling some things over?

6    I'm sure you have plenty to do.  But can you start getting

7    class rep depositions on the books and confirming those kinds

8    of things, hammering out whatever document issues you're

9    having, even though you might still be a little bit at sea?

10    MR. MESTER:  Your Honor, we can certainly address the

11    discovery issues.  We'll have the discovery conference and get

12    a motion to compel on file if they can't be resolved promptly.

13    MR. KAIRIS:  Your Honor --

14    THE COURT:  Go ahead.

15    MR. KAIRIS:  I'm sorry.  Your Honor, before we leave

16    that topic, just for the institutions that are subject to the

17    stayed cases, there was a lot of time and effort that went into

18    putting the bellwethers together.

19    And Mr. Edelson was talking about, you know, how the

20    purpose of the MDL to go through, is to get to some point where

21    there can be settlement conversations.  Well, the whole risk

22    analysis is entirely different if the bellwethers are in one

23    world, where it's whatever results from a (c)(4) issues class;

24    whereas all of these hundred-and-some institutions in the stay

25    have the prospect of a damages class.

1    How do you -- how can they make any intelligent

2    decisions as they watch the bellwether process unfold?

3    And Your Honor addressed *American Pipeline* tolling.

4    The same.  If the bellwethers switch to (c)(4), an entirely

5    different risk analysis for all of the stayed cases if they're

6    not making that same analysis on tolling.

7    So it -- I think it's imperative, where we have

8    bellwether cases that are supposed to be representative of all

9    of these cases, that we keep them on the same path, and

10   whatever modifications are made in the bellwethers cases apply

11   to all the other cases.

12   THE COURT:  Mr. Edelson, I cut you off a moment ago,

13   but go ahead.

14   MR. EDELSON:  No.  I cut you off before, which I

15   apologize for.

16   A couple things.  One is I don't believe that we've

17   engaged in damage discovery, and all this has to -- now we're

18   starting over.  Again, in three of the four sample cases, we've

19   gotten no discovery at all.  So that idea we just don't accept.

20   I'd be very -- well, I feel like we've got to level

21   set for a second.

22   So in a class-action complaint, for example, we have

23   to say certain things like numerosity and predominance and what

24   some of the common questions are.  There's no requirement that

25   you say every single common question.  And that's essentially

1    what they're saying.

2            So even if you -- if there was some new rule, the

3    Mr. Mester rule, that if you're switching your certification

4    theory, you've got to amend, there's no way that rule would

5    say:  And before you're done with discovery, you've got to list

6    exactly the issues and no more.

7            And I think they kind of make that point by saying:

8    Right.  Like, the expert discovery and testimony might impact

9    that.  So generally what happens is we get discovery and then

10   we'll go to our experts, and the experts will say:  You know,

11   this is our opinion, and that will affect things.

12           The idea that we've been hiding the ball in this

13   hearing is a surprising one to me.  If you read the transcript,

14   I think I've been incredibly clear.  I said absent something

15   which I cannot conceive of, and I was suggesting a Seventh

16   Circuit or a Supreme Court case that does something that

17   changes the whole ball game.  Then we are proceeding the same

18   way.  I don't think I was speaking with lack of ambiguity.

19           So, you know, our -- you know our position.

20           THE COURT:  So let me --

21           MR. EDELSON:  I just wanted to make those points

22   clear.

23           THE COURT:  Sure.  And I understand where you're

24   coming from.  But I think you would agree that it is a

25   significant change in approach to say:  We're not pursuing a

1    (b)(3) class in these sample cases.  We instead think this
2    should be issue-based class-wide litigation.  That's a change
3    from what I think the original vision of the sample cases was
4    going to be.

5           It may be that that is the kind of change that
6    happens in any kind of class-action litigation.  You file a
7    complaint and then things happen.  And then when the time comes
8    for you to make a motion for class certification, that is the
9    ordinary time for you to then put your cards on the table and
10   say:  Okay.  Now here's what we're doing.

11          I get that generally.  But I think specifically in
12   this particular case, this particular MDL, this is a bit of a
13   change that, I think reasonably, is causing people to pause for
14   a moment to say:  Well, wait.  What are we doing?  And how are
15   we going to get there?

16          MR. EDELSON:  With respect, Judge, we were discussing
17   that we might have to do an issues class back when we objected
18   to the medical monitoring deal.

19          And I could see there could be an incredible amount
20   of angst if we were kind of going in the other direction.
21   Instead of narrowing the scope, expanding that.  I could see
22   then them rightly flipping out, if I can be that casual here.

23          Here, we're narrowing that.  So I am not quite
24   understanding the consternation.

25          By the way, they do have a very easy mechanism to

1    nail us down in terms of what issues we think should be

2    certified.  Serve us with a contention interrogatory, and we

3    will respond to it.

4          We are not trying to hide the ball at all.  And I

5    apologize that we're speaking, you know, kind of abruptly about

6    really important issues.  And so I'd rather -- if they want to

7    know specifically what issues we think should be certified, I'd

8    rather have a chance to spend a couple weeks and put it on

9    paper rather than just be bound right now.

10         But I think that's a better way to proceed.

11         THE COURT:  Do you need anything from me right now?

12         MR. EDELSON:  I -- we think that we'd speed up these

13   cases by years if we just get the discovery from the state

14   cases.

15         We understand the argument that Judge Lee --

16         THE COURT:  I'm sorry.  Let me rephrase my question.

17         Do you need me to set a deadline for something

18   specific right now, as I sit here today, for you to have

19   something to do --

20         MR. EDELSON:  Apologies.

21         THE COURT:  -- in the short run?

22         MS. HAUSMANN:  A short extension of the schedule

23   might be procedurally helpful, because I believe because this

24   hearing was set -- was delayed, I think that we may have passed

25   the current deadline for class certification motions.

1    THE COURT:  That's fair enough.  Why don't I just
2  strike the current schedule.
3    MS. HAUSMANN:  That also works.  Thank you, Your
4  Honor.
5    THE COURT:  Which isn't imposing a stay on anything.
6  I am just lifting the deadlines so that you can continue to
7  meet and confer and talk about immediate next steps, which my
8  hope would be continue to pursue the class rep depositions and
9  the document issues you're having while waiting further
10  guidance from me as to whether I want an alternative procedural
11  vehicle to tee up some of the issues we've discussed, or
12  whether I say:  I'll give you a little bit more guidance in
13  terms of the scope of discovery.  But I don't know what the
14  motion for class certification will look like until we get a
15  motion for class certification.  And I don't think there needs
16  to be an amended complaint.  I might say that.  But I need to
17  think about that a little bit further.  But I don't want you to
18  walk out of here without at least some concrete action from me,
19  which is I struck your deadlines.
20    On behalf of any of the defendants, is there anything
21  you need from me immediately?
22    MR. MESTER:  No, Your Honor.
23    THE COURT:  Thank you for taking the time for the
24  discussion this morning and for being here.  I will continue to
25  think about the issues raised in the status report and endeavor

1     to give you some further guidance as soon as I can.

2               But with that, we'll be adjourned.

3               MR. EDELSON:  Thank you, Your Honor.

4               THE COURT:  Thank you.

5               MR. MESTER:  Thank you, Your Honor.

6          (Proceedings concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5          I, Colleen M. Conway, do hereby certify that the

6    foregoing is a complete, true, and accurate transcript of the

7    Hearing proceedings had in the above-entitled case before the

8    HONORABLE MANISH S. SHAH, one of the Judges of said Court, at

9    Chicago, Illinois, on March 22, 2023.

10

11

12          _/s/ Colleen M. Conway, CSR, RMR, CRR_        _03/23/23_

13                  Official Court Reporter                 Date
                 United States District Court
14              Northern District of Illinois
                     Eastern Division
15

16

17

18

19

20

21

22

23

24

25